UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Amy L., | No. 22-cv-3069 (DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Amy L. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' cross-Motions seeking judgment on the administrative record. (Docs. 13 (Plaintiff's memorandum), 21 (Defendant's memorandum).) For the reasons below, the Court grants Plaintiff's motion, denies the Commissioner's motion, and remands this matter for the award of benefits.

## BACKGROUND

On April 28, 2020, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging she had been disabled since October 1, 2018, as a result of anxiety, back pain, borderline personality disorder, dependent personality disorder, major depression, obsessive compulsive disorder, "TBI,"[1] neck fusion, fibromyalgia, and serotonin syndrome. (Tr.[2] at 332–45, 397.) The Social Security Administration ("SSA") denied her claim initially (Tr. at 130, 132), and on reconsideration (Tr. at 192, 195). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on October 19, 2021. (Tr. at 37–67). A non-attorney representative represented Plaintiff at the hearing, and Plaintiff testified on her own behalf. (Tr. at 41, 44–60.) Plaintiff amended her disability onset date to February 29, 2020, at the hearing. (Tr. at 12, 44.)

On January 31, 2022, the Commissioner sent a notice of an unfavorable decision to Plaintiff. (Tr. at 8–33.) The ALJ's decision recognized that Plaintiff suffered from multiple severe impairments, including complex regional pain syndrome ("CRPS") of the bilateral upper and lower extremities, chronic pain syndrome, bilateral carpal tunnel syndrome, cervical radiculopathy, tension headache, lumbar degenerative disc disease status post-

---

[1] This term is not defined but is presumably shorthand for a traumatic brain injury. *See* National Institute of Health, National Library of Medicine, *Definitions of Traumatic Brain Injury*, https://perma.cc/ 9PQ4-N7YZ (2019).

[2] The Commissioner filed the consecutively paginated transcript of the administrative record on February 13, 2023. (Docs. 9–9-3.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

surgery, sciatica, cervical degenerative disc disease status post-surgery, lumbar radiculopathy, sacroiliitis, neuropathy, syncope, postural orthostatic tachycardia syndrome, post-traumatic brain syndrome, post-traumatic stress disorder ("PTSD"), post-concussion syndrome, major depressive disorder, generalized anxiety disorder, obsessive compulsive disorder, borderline personality disorder, and adjustment disorder. (Tr. at 14.) The ALJ also acknowledged that Plaintiff had multiple non-severe impairments, including acute bronchitis, tachycardia, sinusitis, left wrist ganglion cyst, hepatitis C, mild post-operative hematoma, thrombocytopenia, gastroesophageal reflux disease, irritable bowel syndrome, and pneumonia. (Tr. at 14–15.)

Despite Plaintiff's mental and physical impairments, the ALJ found that she is not disabled. (Tr. at 25.) In so doing, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)[3] with the following limitations: stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks; no climbing of ladders, ropes, or scaffolds, but occasional climbing of ramps or stairs; occasionally able to balance, stoop, kneel, crouch, and crawl; frequent bilateral handling and occasional bilateral overhead reaching; no exposure to unprotected heights or use of dangerous moving machinery; perform simple, routine, and repetitive tasks in a work environment

---

[3] By regulation, sedentary work involves lifting no more than 10 pounds at a time with occasional lifting or carrying of objects such as files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(c), 416.967(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

3

free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes; and no direct interaction with the public and only occasional interaction with coworkers. (Tr. at 18.) The ALJ credited the testimony of the vocational expert that there are jobs in the national economy that Plaintiff can perform given these limitations. (Tr. at 24–25.)

Plaintiff challenges the ALJ's determination that she is not disabled, arguing that the ALJ did not account for the total limiting effects of Plaintiff's impairments.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520 and 416.920[4] for evaluating SSI and DIB claims. Rather, she asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to account for all of the evidence in the record, namely the total limiting effects of her impairments.

I. **Substantial evidence in the record does not support the ALJ's conclusion that Plaintiff is not disabled.**

Plaintiff's only argument is that substantial evidence in the record does not support the ALJ's determination that she can perform sedentary work. According to Plaintiff, the total limiting effects of all of her impairments preclude her from performing even sedentary work. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e) (providing that the ALJ "will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity"); *see also id.* ("In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . ."). Relatedly, Plaintiff asserts that the ALJ failed to consider

---

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

whether the total limiting effects of Plaintiff's impairments would preclude sustained work activities, because the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . mean[ing] 8 hours a day, for 5 days a week." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996).

The Commissioner responds that substantial evidence in the record supports the ALJ's RFC determination. He points out that providers noted improvement in Plaintiff's symptoms and that Plaintiff often had normal gait, strength, and range of motion.

As noted above, "substantial evidence" is enough evidence that reasonable minds would accept the conclusion reached as supportable. *Biestek*, 139 S. Ct. at 1154. The question here is whether reasonable minds would accept, on this record, the ALJ's conclusion that the total limiting effects of all of Plaintiff's impairments allow her to perform full-time, gainful work activities. In making this determination, the Court is mindful that the ALJ's decision should be reversed only if it falls outside "the available zone of choice," meaning that the ALJ's decision is not among the reasonable conclusions that can be drawn from the record evidence. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

The record here is overwhelming that Plaintiff's impairments—specifically her pain, along with the mental distress caused by that pain—preclude her from maintaining competitive employment. Although the Commissioner is correct that providers occasionally note improvement in Plaintiff's symptoms, even those records make clear that Plaintiff's pain remains debilitating. For example, the Commissioner points to a medical

6

examination report from October 15, 2020, noting that Plaintiff had "some improvement of symptoms following last visit." (Tr. at 699.) The Commissioner fails to recognize that Plaintiff's "last visit" was three days before, and the provider also stated that Plaintiff's "[s]ymptoms seem to stay improved until about yesterday" when Plaintiff's pain again increased. (*Id.*) The "improvement" noted in this record thus lasted for two days. In another example the Commissioner cites for improved symptoms, on October 9, 2020, Plaintiff reported "[n]oticing a couple of days of improvement after last visit." (Tr. at 708–09.) But what Plaintiff told the provider is that, immediately after her visit two days before, she improved enough to be able to sleep. Plaintiff also stated that her "[p]ain has begun to return" and rated her pain as an 8 out of 10. (*Id.* at 709.)

      The Commissioner emphasizes that Plaintiff often had "unremarkable" physical examinations and normal gait and range of motion, but does not acknowledge that the majority of the records on which he relies for this argument are psychiatric—not medical—progress notes, many of which also discuss that Plaintiff's ongoing struggles with pain adversely affected her mental health. (*E.g.*, Tr. at 1889 (Jan. 25, 2021, psychiatric follow-up noting smooth and normal gait, symmetric muscles, and full range of motion); 1900 (same); 1911 (same), 1921 (same), 1931 (same); 1946 (same); *see also* Tr. at 1955, 1960 (June 2, 2021, psychiatric follow-up noting normal gait and range of motion but also that Plaintiff "[t]ries to stay busy to get her mind off the pain. Has fallen several times due to leg weakness."); Tr. at 1965, 1970 (July 14, 2021, psychiatric follow-up noting normal gait and range of motion but also that Plaintiff "has been very ill for the past 3 weeks with increase in pain in hands and feet."); Tr. at 1975, 1980–81 (Aug. 5, 2021, psychiatric

7

follow-up noting normal gait and range of motion but also states Plaintiff is "overwhelmed with the pain . . . [w]ishing often that God would take her," and that Plaintiff had "significant edema, chronic pain and her pain has not diminished.").

Multiple medical providers also commented on Plaintiff's pain, in records that the Commissioner claims support the ALJ's determination that Plaintiff's symptoms were improving. The Commissioner cites a January 16, 2020, examination that characterized Plaintiff's gait as "NORMAL." (Tr. at 872.) In this same examination, however, Plaintiff reported "recent agitation of chronic neck and back pain symptoms" and that "she has been unable to manage symptoms with home exercises." (Tr. at 866.) Plaintiff rated her pain as 8 out of 10 and "[g]radually getting worse." (*Id.*) Plaintiff's straight-leg-raise test was positive at this examination, and the provider noted tenderness, muscle spasms, and joint asymmetry and restriction, describing an "acute flareup" of Plaintiff's pain and listing Plaintiff's prognosis as "Guarded." (Tr. at 873.) Similarly, the Commissioner relies on an October 7, 2020, medical examination in which Plaintiff reported "improved ability to sleep." (Tr. at 713.) What Plaintiff reported, however, was a 20 percent improvement in her ability to sleep. (*Id.*) And that examination also noted that Plaintiff rated her cervical pain as nine to 10 out of 10, with the provider describing Plaintiff as experiencing "[m]oderate/severe exacerbation of ongoing neck and back pain symptoms." (Tr. at 711–12.) In another record on which the Commissioner relies, the provider listed Plaintiff's gait as normal (Tr. at 942), but also stated that Plaintiff had "chronic back pain with a current flare for the past 3 weeks" with her pain "getting worse." (Tr. at 939.) Plaintiff reported at that visit that her pain was nine out of 10 and she "can't get pain below 5/10." (*Id.*) And

8

immediately after describing Plaintiff's gait as normal, the provider stated that her lumbar spine was tender to palpation, and noted that she was "frequently changing positions due to discomfort." (Tr. at 942.)

In yet another record on which the Commissioner relies, the provider described Plaintiff's gait as "intact" but also that "[t]enderness [was] present" on a musculoskeletal exam. (Tr. at 1764.) This appointment was a pre-operative visit before Plaintiff's second cervical-spine surgery, necessitated because she was "[s]till having significant amounts of cervical radiculopathy . . . [and] numbness in her hands and arms" and there was "hardware that protrudes anteriorly [which] appears to be affecting her esophagus." (Tr. at 1756.) The discharge summary the day after this February 2021 surgery described full range of motion and normal motor strength, stating that her pain "was very well controlled." (Tr. at 1621–22.) But by June 2021, Plaintiff had been diagnosed with "[c]omplex regional pain syndrome" of both upper and lower extremities. (Tr. at 1799.) Although medication was "helpful," Plaintiff told her physician that she "will get some relief for a couple of days but then . . . she gets rather severe pain flareups." (Tr. at 1797.) The Commissioner presumably cites this record for its statement that her gait and motor function were "intact," but neglects to mention that the physical exam noted tenderness, frequent repositioning, and edema in both lower legs. (Tr. at 1799.)

The Court may not "reweigh th[e] evidence" when evaluating the ALJ's RFC. *Austin*, 52 F.4th at 731. But "[t]he ALJ may not cherry pick evidence in the record to support the RFC." *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *4 (W.D. Mo. Feb. 9, 2021). No reweighing of evidence is necessary here, because even the

9

medical records on which the ALJ relied do not support her conclusion that Plaintiff could maintain gainful employment. In particular, the ALJ's finding that Plaintiff was "feeling better, and medication was helpful in relieving pain" and that, after her second cervical-spine surgery in February 2021, Plaintiff's "pain had substantially improved, and she was doing much better" (Tr. at 20 (citing Tr. at 1612–872)), is not supported by the records on which the ALJ relied. Plaintiff did describe her pain as "very well controlled" on the day she was discharged from the hospital. (Tr. at 1621.) In follow-up visits in the two months after surgery, Plaintiff also reported that she had "less pain than before surgery" (Tr. at 1678), and "better controlled neck pain." (Tr. at 1679.) In April 2021, however, she experienced "acute exacerbation of chronic low back pain," describing the pain as "horrible." (Tr. at 1783.) At this visit, she reported that her "symptoms have been worsening lately." (Tr. at 1785.) In June 2021, she was positive for back pain, neck and back spasms, neck pain, and neck stiffness, with the provider noting that she "can't sit long [and] keeps moving to help with back/buttocks spasms." (Tr. at 1798–99.) And by July 2021, Plaintiff had "been having numerous symptoms and multi-focal pain," describing "worst pain in her low back and hips." (Tr. at 1684.) She rated her pain as 9 out of 10. (Tr. at 1692.) Other July 2021 records similarly note that Plaintiff had back and neck pain, and that she frequently repositioned herself because of pain. (Tr. at 1837–38.) In August, she told her physical therapist that she her back and neck were "hurting more again." (Tr. at 1866.) She described back pain, myalgias, neck pain, neck stiffness, and numbness in her hands and arms, and rated her pain as 8 out of 10 in a November 2021 visit. (Tr. at 1706–07.)

"When the Commissioner's decision to deny benefits is improper, [the Court] ordinarily will remand for further proceedings out of an abundance of deference to the agency's authority to make benefits determinations." *Ingram v. Barnhart*, 303 F.3d 890, 895 (8th Cir. 2002). However, "where the record overwhelmingly supports a finding of disability," the appropriate remedy is "[r]eversal and remand for an immediate award of benefits." *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). This record "overwhelmingly supports a finding of disability," *id.*, and the immediate award of benefits is therefore required.

### ORDER

Based on the above, and on all the files, records, and proceedings in this case,

**IT IS ORDERED** that:

1. Plaintiff Amy L.'s Motion (Doc. No. 13) is **GRANTED**;

2. Defendant Martin J. O'Malley's Motion (Doc. No. 21) is **DENIED**; and

3. The matter is remanded to the Commissioner to award benefits to Plaintiff in the amount required under the applicable statutes and regulations.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 23, 2024                *s/Douglas L. Micko*
                                        DOUGLAS L. MICKO
                                        United States Magistrate Judge